**Carl E. ECKMAN, Jr., et al., Petitioner,**

v.

**CENTENNIAL SAVINGS BANK, Respondent.**

No. C–7291.

Supreme Court of Texas.

Feb. 21, 1990.

Rehearing Overruled Feb. 21, 1990.

Frank Gilstrap and Shane Goetz, Arlington, for petitioner.

Michael Lowenberg, Kathleen M. La-Valle, Dallas, and Larry W. Green, Greenville, for respondent.

ON MOTION FOR REHEARING

HIGHTOWER, Justice.

Respondent's motion for rehearing is overruled. The opinion of October 26, 1988 is withdrawn and the following is substituted.

---

This case under the Deceptive Trade Practices—Consumer Protection Act (DTPA), Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (Vernon 1987), involves the issue of whether the plaintiff has the burden to plead and prove the inapplicability of the $25,000,000 exception to business consumer status under section 17.45(4) of the DTPA. A jury returned a verdict in favor of the petitioners, Carl E. Eckman, Jr., James E. Nicholson, M.D., and Gary Hutchison, M.D. (hereinafter "the Eckman group") on their DTPA claim. The trial court, however, rendered judgment *non obstante veredicto* favoring respondent Centennial Savings Bank (hereinafter "Centennial"). The court of appeals affirmed. 742 S.W.2d 826. We reverse and remand this cause to the court of appeals.

The Eckman group, together with Kenneth Jackson, formed the Gaslight Square Apartments Venture in 1983.[1] The sole purpose of the venture was to construct an 88 unit apartment complex. Centennial agreed to provide both interim and permanent financing for the venture. The interim loan closed in June 1984, at which time the first draw of $158,000 was disbursed to the joint venture, of which $54,000 was retained by Centennial as a loan commitment fee.

Meanwhile, a separate venture formed by the Eckman group and Jackson, also financed by Centennial, was having financial problems. The accounts created for the venture were constantly overdrawn and the borrowers were failing to make timely interest payments. Because of these problems, Centennial announced that it would not advance any more interim funds for the Gaslight project until the partners provided updated financial statements. Several months went by and the group failed to provide the requested statements and failed to make their first quarterly interest payment on the Gaslight loan. Thereafter, Centennial refused to provide any more funds and refused to return the commitment fee. The Eckman group filed a breach of contract action against Centennial and later amended their pleadings to include a DTPA claim.[2] Centennial filed special exceptions, generally asserting that the Eckman group had "failed to plead that they are consumers within the meaning of the DTPA." However, Centennial's special exceptions did not mention the exclusion concerning business consumers that have assets of $25,000,000 or more. In their amended pleadings, the Eckman group specifically alleged that "they are business consumers within the meaning of section 17.45(4), (10), Texas Deceptive Trade Practices—Consumer Protection Act, and sought to acquire goods or services during the course of the transaction".

After a jury verdict in favor of the Eckman group on their DTPA claim,[3] the trial court rendered judgment *non obstante veredicto* in favor of Centennial. The trial court apparently reasoned that since the

---

**1.** Gaslight Square Apartments Venture was composed of Carl E. Eckman, Jr., James E. Nicholson, M.D., Gary Hutchison, M.D. and Kenneth Jackson; however, only Mr. Eckman, Dr. Nicholson and Dr. Hutchison are parties in this case. Neither the joint venture nor Mr. Jackson are parties in this case. According to the Eckman group's pleadings, Mr. Jackson transferred all of his right, title and interest arising out of his claim against Centennial to them through a third person prior to the filing of the lawsuit.

**2.** Mr. Eckman, Dr. Nicholson and Dr. Hutchison filed suit against Centennial in their individual capacities.

**3.** At trial, Centennial introduced financial statements of the Eckman group and Mr. Jackson indicating their gross assets as follows:

Eckman—$10,146,036 as of 10/84

Nicholson—$6,891,185 as of 10/84
—$7,302,645 as of 8/85
Hutchison—$5,174,935 as of 10/84
—$6,368,698 as of 9/85
Jackson—$6,345,740 as of 5/84.

Based upon the financial statements, the total gross assets of Mr. Eckman, Dr. Nicholson and Dr. Hutchison ranged from $22,212,156 to $23,817,379 and the total gross assets of Mr. Eckman, Dr. Nicholson, Dr. Hutchison and Mr. Jackson ranged from $28,557,896 to $30,163,119. However, since the joint venture and Mr. Jackson are not parties in this case and the total gross assets of Mr. Eckman, Dr. Nicholson and Dr. Hutchison are less than $25,000,000, we reserve the question of whether Mr. Eckman, Dr. Nicholson and Dr. Hutchison are individual "business consumers" who are subject to the $25,000,000 DTPA limitation individually and not as a group.

joint venture claimed gross assets in excess of $25,000,000, the Eckman group lacked standing as consumers under the DTPA.[4] The court of appeals affirmed, holding that Centennial was entitled to judgment n.o.v. because the Eckman group failed to prove that their assets were less than $25,000,000[5] and therefore did not qualify as a "business consumer" under the DTPA.

A plaintiff must be a "consumer" to maintain a private action under the DTPA. *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 388 (Tex. 1982). The DTPA defines a consumer as:

> ... an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, *except* that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987) (emphasis added). "Business consumers" are defined to include individuals, partnerships, or corporations who seek or acquire by purchase or lease, any goods or services for commercial or business use. Tex.Bus. & Com.Code Ann. § 17.45(10) (Vernon 1987). Thus, business consumers, whether individuals or businesses, with assets of $25,000,000 or more are excluded from DTPA coverage. This case raises the narrow issue of whether the plaintiff must plead and prove the inapplicability of the $25,000,000 exception or whether the defendant has the burden to plead and prove the

applicability of the $25,000,000 exception as an affirmative defense.

The Eckman group asserts that the court of appeals erred in holding that the plaintiffs had the burden to plead and prove that they did not have assets of $25,000,000 or more in order to qualify as a "business consumer" under the DTPA. In response, Centennial asserts that the Eckman group should be required to show that they did not have assets of $25,000,000 or more as part of the proof required to establish consumer status.

In support of the proposition that the defendant should bear the burden to plead and prove the applicability of the $25,000,000 exception of section 17.45(4), the Eckman group relies upon *Challenge Transportation v. J–Gem Transportation, Inc.*, 717 S.W.2d 115 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). In that case, the court of appeals held that the defendant had the burden to plead and prove that the plaintiff fell within the category of excepted businesses. The court observed that:

> J–Gem pled and proved by undisputed evidence that it was a corporation which had acquired services by lease; in so doing J–Gem satisfied its burden of proof regarding its status as a consumer. J–Gem was not required to prove a negative by showing it did not fall within the exception. Appellants had the burden of proving the affirmative defense that J–Gem fell within the category of excepted businesses.

*Id.* at 117. We agree with the Eckman group and hold that the defendant has the

---

4. The order granting Centennial's Motion for Judgment Non Obstante Veredicto stated:

   (A) Messrs./Doctors Eckman, Nicholson, Hutchison and Jackson's financial statements provided to CENTENNIAL SAVINGS BANK claimed assets in excess of $28,000,000.00. Therefore, the Gaslight Square Joint Venture lacked consumer standing to bring suit under the Deceptive Trade Practices–Consumer Protection Act because it exceeded the $25,000,000.00 asset limitation of the DTPA.

   (B) Because of the foregoing, Plaintiffs also lacked consumer standing to bring an action as individuals under the Deceptive Trade Practices–Consumer Protection Act.

5. Concerning the Eckman group's failure to prove that their assets were less than $25,000,000.00, the court of appeals stated:

   Centennial closed the loan on June 29, 1984, *without* financial statements from the appellants, although Centennial's president, Charles Senning, stressed the importance of having such statements. The record reflects that no other evidence was presented regarding the appellants' assets on June 29, 1984. Therefore, there is no evidence to review which would allow appellants to qualify as a business consumer under the $25 million limitation.

   742 S.W.2d at 828 (emphasis in original).

burden to plead and prove the applicability of the $25,000,000 exception to business consumer status as an affirmative defense.

Treating the $25,000,000 exception as an affirmative defense promotes efficiency in DTPA litigation. The comparative likelihood that a certain situation may occur in a reasonable percentage of cases should be considered when determining whether a fact should be allocated as an element of the plaintiff's case or to the defendant as an affirmative defense. *See* 2 R. McDonald, *Texas Civil Practice in District and County Courts,* § 7.34.1 (rev. 1982). Obviously, most litigants do not have assets of $25,000,000 or more. Requiring every DTPA plaintiff to prove that he is not a multimillionaire would be an inefficient and uneconomical use of judicial resources. Section 17.44 requires that the DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers ... and to provide efficient and economical procedures to secure such protection." Tex.Bus. & Com.Code Ann. § 17.44 (Vernon 1987). *See Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239, 242 (Tex.1985); *Joseph v. PPG Industries, Inc.,* 674 S.W.2d 862, 865 (Tex. App.—Austin 1984, writ ref'd n.r.e.). Requiring the defendant to plead and prove the $25,000,000 exception as an affirmative defense is consistent with the statutory mandate "to provide efficient and economical procedures" to protect consumers. Adopting this procedure best serves the interests of judicial efficiency and economy.

Since in most cases the claimant does not have assets of $25,000,000 or more, the burden of raising and negating the applicability of the $25,000,000 exception to business consumer status should not be cast upon the plaintiff. The result reached by the court of appeals in this case is unduly prejudicial toward a business consumer in a DTPA suit because the claimant would be required to plead and prove both that he is a consumer under section 17.45(10) and that he does not fall within the $25,000,000

exception to business consumer status under section 17.45(4). If the plaintiff should fail to plead specifically the inapplicability of the exception and fail to produce evidence that he falls outside the exception, the defendant would be entitled to a directed verdict. Barring a plaintiff's recovery because he did not raise and prove the inapplicability of an exception to standing would be unfair, especially if the plaintiff had succeeded in pleading and proving all other elements necessary for recovery under the DTPA.

■ Under our present holding—treating the $25,000,000 exception as an affirmative defense—evidence concerning the plaintiff's financial status is irrelevant unless the issue is raised by the defendant. However, once the issue is raised, information concerning the plaintiff's assets and financial status will be discoverable to determine the applicability of the $25,000,000 exception.[6] This court has long recognized the danger that a jury will be prejudiced by evidence of a party's financial status. *See Texas Co. v. Gibson,* 131 Tex. 598, 116 S.W.2d 686, 687 (1938). As a result, Texas courts have been cautious concerning evidence of a party's wealth. *See Coca Cola Bottling Co. v. Tannahill,* 235 S.W.2d 224, 226 (Tex.Civ.App.—Fort Worth 1950, writ dism'd); *Wilmoth v. Limestone Products Co.,* 255 S.W.2d 532, 534 (Tex.Civ.App.—Waco 1953, writ ref'd n.r.e.); *Upjohn Co. v. Petro Chemicals Suppliers, Inc.,* 537 S.W.2d 337, 340 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.); *First National Bank of Marshall v. Beavers,* 619 S.W.2d 288, 289 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *First National Bank of Amarillo v. Bauert,* 622 S.W.2d 464, 469 (Tex.App.—Amarillo 1981, no writ); *Murphy v. Waldrip,* 692 S.W.2d 584, 588 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.). Consequently, whenever possible, trial courts and parties should attempt to resolve the applicability of the $25,000,000 exception prior to trial. For the reasons explained herein, we hold that the defen-

6. Litigants subjected to overly intrusive or frivolous discovery requests are adequately protected by the rules of civil procedure.

dant has the burden to plead and prove the applicability of the $25,000,000 exception to business consumer status as an affirmative defense.

Centennial advanced several other points of error in the court of appeals but that court did not consider the points because of its erroneous conclusion that the Eckman group failed to carry the burden of proving the inapplicability of the $25,000,000 exception to business consumer status. We have the option of either examining the points of error not considered by the court of appeals in order to determine if any of those points will support the court of appeals' judgment or we may remand the cause to the court of appeals for it to pass on the unconsidered points. *See Coulson v. Lake LBJ Municipal Utility District,* 734 S.W.2d 649, 652 (Tex.1987). Because the unaddressed points of error include attacks on the sufficiency of the evidence, we remand the entire cause to the court of appeals for consideration of all previously unaddressed points. *Id.*

Accordingly, we reverse and remand the cause to the court of appeals.