Henry MOTE, Plaintiff,

v.

**ORYX ENERGY COMPANY, Dowell Schlumberger, Inc., FMC Corporation, and Dan Webster, Defendants.**

No. 1:94–CV–594.

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 26, 1995.

292

B.J. Walter, Houston, TX, James C. Klick, New Orleans, LA, for plaintiff.

Robert Killeen, Jr., Griffin & Laser, Houston, TX, for Oryx.

Ken Kendrick, Kelly Sutter Mount & Kendrick, Houston, TX, for Daniel Webster.

*MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT WEBSTER'S PARTIAL MOTION TO DISMISS AND OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION*

SCHELL, Chief Judge.

Before the court is Defendant Dan Webster's Partial Motion to Dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Webster has moved to dismiss Plaintiff's claim brought under the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA") on the ground that Plaintiff is not a "consumer" and, therefore, not entitled to recover under the DTPA.

## PROCEDURAL HISTORY

The motion was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate for findings of fact, conclusions of law, and recommendations for disposition of the case. The Honorable Earl S. Hines, United States Magistrate Judge, issued a report on August 18, 1995, recommending that the motion be granted so as to dismiss Plaintiff's DTPA claim against Webster.

Plaintiff filed objections to the Magistrate Judge's report on September 7, 1995. Although Plaintiff filed three separate objections, the essence of these objections may be simply stated. Plaintiff objects to the Magistrate Judge's recommendation that Plaintiff's DTPA cause of action be dismissed due to the finding that Plaintiff is not a "consumer" as defined by the DTPA. This court has completed a *de novo* review of the Magistrate Judge's report, the objections, the parties' submissions, and the applicable case law. Based on this review, it is ORDERED that Plaintiff's objections are OVERRULED and Webster's motion to dismiss is GRANTED with respect to Plaintiff's DTPA claim.

## DISCUSSION

On October 9, 1993, Plaintiff was injured while working for Mallard Bay Drilling, Inc.

on an offshore oil rig in the Gulf of Mexico. Plaintiff brought this action to recover for his injuries. Plaintiff has sued numerous defendants, but the Plaintiff's status relative to Defendant Webster is the central inquiry for purposes of this motion.

At the time of Plaintiff's accident, Webster had been retained by Oryx Energy Company, the platform operator, to "provide Drilling Foremen/Engineers for the purpose of drilling wells in Offshore Gulf of Mexico...." Contract at 1 (Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss Pursuant to Rule 12(b)(6)). A preprinted addendum to this contract required Webster to "exercise due care to perform work in a safe manner which does not constitute a hazard to [Oryx] employees, [Oryx] property or the public." *Id.* at 4. Plaintiff contends that these contractual provisions provide a nexus between Webster's services and Plaintiff. Specifically, Plaintiff argues that because Webster's services were to be performed safely, Plaintiff received a benefit from such services, namely working on a safe rig. Therefore, Plaintiff concludes that he "acquired" the benefit of Webster's services by virtue of his relationship to the transaction and, thereby, qualifies as a DTPA consumer as to Webster.

██ Standing as a "consumer" is a prerequisite to recovery under the DTPA. Tex. Bus. & Com.Code Ann. § 17.50(a) (Vernon 1987). For purposes of the statute, a consumer is one "who seeks or acquires by purchase or lease, any goods or services." *Id.* § 17.45(4). Consumer standing accrues based on a plaintiff's relationship to a transaction and does not require a contractual relationship between the plaintiff and defendant. *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 368 (Tex.1987). According to Texas case law interpreting the DTPA, a plaintiff may "acquire" goods or services that were purchased for the plaintiff's benefit by another party. *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex.1985).

Although Texas courts historically have interpreted the DTPA broadly, a recent trend among Texas intermediate appellate courts has made qualification as a "consumer" in the employment context more difficult. The case of *Lara v. Lile*, 828 S.W.2d 536 (Tex.App.—

Corpus Christi 1992, writ denied), is strikingly similar to the case at bar. In *Lara*, a construction worker was killed by a truck while working at a construction site. *Id.* at 537. The decedent's statutory beneficiaries brought a wrongful death action against the decedent's employer, Heldenfels Brothers, Inc. ("Heldenfels"), and against Charles Lile d/b/a Raven Transport and Raven Supply (collectively "Raven") who had contracted with Heldenfels to "deliver concrete boxes to be used in the construction of drainage culverts at the site." *Id.* at 539.

The plaintiffs in *Lara* also asserted claims against Raven under the DTPA. The plaintiffs argued that the decedent qualified for consumer status as to Raven by virtue of the decedent's relationship to the transaction between Raven and the decedent's employer, Heldenfels. *Id.* at 542. Specifically, the plaintiffs argued that the decedent "had a relationship to the transaction between Heldenfels and Raven in that [the decedent] and the other workers on the construction site 'acquired' the benefits of a safe place to work from Raven; in other words, the Heldenfels workers acquired the benefits derived from Raven's drivers being careful or safety-conscious while making deliveries to the job site." *Id.* The *Lara* court rejected this argument and concluded: "[T]ransportation was the primary service acquired; safety was incidental, albeit essential. The primary service acquired was not for the benefit of the Heldenfels employees, and was not received or acquired by them." *Id.* Thus, because the *primary purpose* of the contract was to facilitate transportation, and not to provide the decedent with a safe workplace, the plaintiffs in *Lara* failed to qualify for consumer status under the DTPA. This stricter standard also was applied in *Brandon v. American Sterilizer Co.*, 880 S.W.2d 488, 492 (Tex.App.—Corpus Christi 1992, no writ) ("An employee is entitled to consumer status under the DTPA on claims involving goods or services an employer purchases primarily for the employee's benefit."). *See also Nabors Loffland Drilling Co. v. Martinez*, 894 S.W.2d 70, 74 (Tex.App.—San Antonio 1995, writ denied); *Hernandez v. Kasco Ventures,*

*Inc.*, 832 S.W.2d 629, 634 (Tex.App.—El Paso 1992, no writ).

## APPLICATION

■ Applying this "primary purpose" standard to the case at bar, Plaintiff fails to qualify as a consumer as to Webster. According to Article 1 of Webster's contract, entitled "The Work," Webster was obligated to "provide Drilling Foremen/Engineers for the purpose of drilling wells in Offshore Gulf of Mexico or Offshore California. . . ." Contract at 1 (Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss Pursuant to Rule 12(b)(6)). Thus, based on an examination of the terms of the contract at issue, the court is of the opinion that the primary purpose for this transaction was the acquisition of engineering services. Engineering expertise was the primary service acquired; safety, although provided for in the contract, was incidental to the provision of the engineering services. Therefore, in accordance with *Lara* and *Brandon,* Plaintiff does not qualify as a "consumer" for purposes of recovering from Webster under the DTPA. Accordingly, Defendant Webster's motion to dismiss Plaintiff's DTPA claim is GRANTED and the objections to the Report and Recommendation of the United States Magistrate Judge are OVERRULED.

## *REPORT AND RECOMMENDATION*

EARL S. HINES, United States Magistrate Judge.

Pending are defendants Dan Webster and Walsh Offshore Inc.'s motions to dismiss for failure to state a claim, brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

This action was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636; Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate, dated July 3, 1980; and General Order 91–116, for pretrial dispositions and recommendations for dispositions of motions for injunctive or other dispositive relief.

1. Tex.Bus. & Com.Code Ann. § 17.41–.63 (Vernon 1987) ("DTPA").

## I. *Background and Nature of the Case*

Oryx Energy Company operates a platform on an artificial federal island existing on the Outer Continental Shelf, off the coast of Texas and in the Gulf of Mexico. Plaintiff Henry Mote, an employee of Mallard Bay Drilling, Inc., worked as a floorman on Mallard's rig, located on the Oryx platform.

On October 9, 1993, plaintiff sustained injuries when a swivel joint fell onto him as it was being hoisted in the air. The incident rendered plaintiff paraplegic.

Plaintiff sues defendants Oryx Energy Company ("Oryx"), Dowell Schlumberger, Inc., FMC Corporation, Dan Webster, and Walsh Offshore, Inc. ("Walsh"). Oryx operated the platform on which plaintiff was employed by Mallard Bay Drilling, Inc. Dan Webster was an Oryx consultant at the time of plaintiff's accident. Dowell Schlumberger tested blow-out preventers on the platform, including a swivel joint purchased from FMC Corporation, the manufacturer. Walsh Offshore contracted with Oryx to provide safety technicians and services.

Plaintiff asserts various causes of action, including a claim under the Texas Deceptive Trade Practices Act.[1] Plaintiff contends he has a DTPA cause of action against Webster and Walsh because their conduct constituted breach of an implied warranty to perform services in a good and workmanlike manner. No specific misrepresentation is alleged. Plaintiff further claims that these defendants' actions violated DTPA because defendants represented their services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. Plaintiff fails to plead specifically what representations were made regarding these services.

## II. *The Motions to Dismiss*

Invoking Federal Rule of Civil Procedure 12(b)(6), defendants Webster and Walsh Offshore, Inc. move for dismissal of plaintiff's claims brought against them pursuant to the Texas Deceptive Trade Practices Act ("DTPA").[2] Webster and Walsh argue plain-

2. Defendant Webster's amended motion to dismiss also contains an argument related to lack of personal jurisdiction. Because this issue has

tiff is not a "consumer" as defined by DTPA and therefore may not assert causes of action under the act.

### III. Discussion

Matters outside of the pleadings have been submitted to the undersigned in support of the motions. Consequently, the motions are not properly analyzed as "motions to dismiss," but instead, motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. *See United States v. East Baton Rouge Parish Sch. Bd.,* 594 F.2d 56, 57 n. 3 (5th Cir.1979).

Although defendants bring these motions, plaintiff must prove consumer status under DTPA, and therefore maintains the burden of proof. *See Rojas v. Wal–Mart Stores, Inc.,* 857 F.Supp. 533, 536 (N.D.Tex.1994) (plaintiff's failure to produce any evidence concerning one part of the definition of "consumer" justified granting defendant's motion for summary judgment, the general rule that evidence should be viewed in the light most favorable to the nonmoving party notwithstanding).

### A. Who is a "Consumer?"

The Deceptive Trade Practices Act defines "consumer" as "an individual ... who seeks or acquires by purchase or lease, any goods or services." TEX.BUS. & COM.CODE ANN. § 17.45 (Vernon 1987). The Texas Supreme Court has held that "acquiring" goods or services need not involve, in every case, a direct transaction of purchase by plaintiff. *Kennedy v. Sale,* 689 S.W.2d 890 (Tex.1985). "Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under DTPA." *Flenniken v. Longview Bank & Trust, Co.,* 661 S.W.2d 705, 706 (Tex.1983). "One may acquire goods or services that have been purchased by another for the plaintiff's benefit." *Wellborn v. Sears, Roebuck & Co.,* 970 F.2d 1420 (5th Cir.1992).

### B. Framework for Analysis

The appropriate inquiry is whether plaintiff acquired benefits from the purchase of Webster's or Walsh's services, and whether such benefit to plaintiff was a motivating factor in the purchase. *See Wellborn,* 970 F.2d 1420 (mother's purchase of garage door opener to enhance minor son's safety while she worked nights made minor a consumer); *Kennedy,* 689 S.W.2d at 892 (employer's purchase of a group health insurance policy made employee a consumer); *Lara v. Lile,* 828 S.W.2d 536 (Tex.App.—Corpus Christi 1992, writ denied) (plaintiff not a consumer where transportation was primary purpose of trucking services purchase). Some Texas courts interpret this test more narrowly as meaning that the purchaser's *primary* purpose for purchasing the good or service was to benefit the plaintiff. *See, e.g., Brandon v. American Sterilizer Co.,* 880 S.W.2d 488, 490 (Tex.App.—Austin 1994). Regardless, the purchaser must contemplate benefit to the plaintiff as a significant factor in the purchase.

There was no contract executed by plaintiff or his employer Mallard Bay Drilling, Inc. and defendants Walsh and Webster. Any standing to assist a claim under DTPA would arise from the contracts executed between Walsh and Oryx and Webster and Oryx. *Birchfield v. Texarkana Memorial Hosp.,* 747 S.W.2d 361, 368 (Tex.1987) (plaintiff may establish standing under DTPA in terms of relationship to transaction, not by contract).

In sum, analysis of whether Mote is a consumer of Webster's and Walsh's services relies on resolution of two questions: What services did Oryx purchase from Dan Webster and what was plaintiff's relationship to that purchase?

### C. Application Re Defendant Dan Webster

Plaintiff alleges that "Dan Webster contracted with ... Oryx to provide drilling foremen/engineers for the purpose of drilling wells in offshore Gulf of Mexico or offshore

---

been previously discussed, and the recommendation of the undersigned magistrate judge adopted by the district judge, finding Webster is subject to personal jurisdiction, Webster's amended motion to dismiss as it pertains to personal jurisdiction is moot.

California." Plaintiff's First Amended Complaint at 8. This assertion is reiterated in the plaintiff's response to the present motion.[3] Plaintiff's Response to Defendant Dan Webster's Motion to Dismiss Pursuant to Rule 12(b)(6) at 4 [hereinafter "Plaintiff's Response"]. Plaintiff argues in his response to the motion that Webster also contracted to (1) "exercise due care" in performing his contract, (2) "conduct [his] activities in carrying out this contract in full compliance with all federal, state and local safety and health laws and regulations," and (3) "establish written safety work procedures and rules which reflect recommended industry safety practices." *Id.*

The obligation to act safely was signed by defendant Webster and incorporated into his contract. It is contained in a pre-printed addendum to Webster's personalized contract with Oryx. This form designated that the "Work shall consist of" "provid[ing] Drilling Foremen/Engineers for the purpose of drilling wells...." Exhibit C, Plaintiff's Response. Walsh's representatives signed an identical addendum, and it appears Oryx requires all its contractors to sign this supplement, the terms of which appear standard.

When Oryx contracted with Webster, the contract executed between the parties clearly denotes that Webster's primary purpose was "to provide drilling foremen/engineers for the purpose of drilling wells in offshore Gulf of Mexico or offshore California." Plaintiff was not one of the employees provided by Webster. Plaintiff argues "a major component of the services of Dan Webster purchased by Oryx was the assurance of safety for employees working on the rig." Plaintiff's Response at 5. However, the documents submitted do not support this contention. The provision of safety "services" from Webster occurred peripherally, according to the contract, through the prudent exercise of Webster's employment. *See Lara*, 828 S.W.2d at 541 ("Transportation was the primary service acquired; safety was incidental, albeit essential."). To adopt plaintiff's argument as it applies to Webster would transform every employment contract into a potential DTPA suit. Therefore, plaintiff is not a consumer of Webster's services for purposes of DTPA because Oryx's purpose in securing Webster's services was not to benefit Mote.

## D. Application Re Defendant Walsh Offshore, Inc.

Walsh argues, first that plaintiff is not a consumer because Oryx, who actually purchased Walsh's services, has assets of over twenty-five million dollars, therefore, Oryx is not a business consumer and is excluded from recovery under DTPA. *Eckman v. Centennial Sav. Bank*, 784 S.W.2d 672, 674 (Tex.1990). However, logic demands that if the analysis is whether Mote is the consumer under DTPA, it is his financial status that determines standing under DTPA, and not Oryx's.[4] Walsh does not contend that Mote has assets over twenty-five million. Thus Mote has standing to sue under DTPA.

Walsh also argues that no contract was executed between it and Mallard, plaintiff's employer. However, the fact that Mote's actual employer was Mallard and not Oryx is not dispositive. Mote was employed to perform on the Oryx platform. Although he was not employed by Oryx, no precedent establishes the requirement the two contracting parties be in privity with one another under DTPA. *Birchfield*, 747 S.W.2d at 368.

The decisive factor, again, is whether Oryx's significant purpose was to secure benefits of services for those persons working on its platform when it contracted with Walsh.

Walsh's contract with Oryx is rift with references to the provision of health, safety, and environmental program. A safety technician aboard the platform is named in plaintiff's complaint as "an agent, servant, or employee of Walsh." The "Current Rate Schedule" for Walsh Offshore Company, at-

---

3. There also appears continuing conflict as to whether Webster was the "Oryx company man" aboard the platform. Such a job description is vague and inconclusive as applied to this analysis.

4. Neither Walsh nor Webster have presented the court with case law supporting the contention that when vicarious status as a consumer is at issue, plaintiff stands in the purchaser's shoes with regard to determination of assets for purposes of DTPA.

tached to the contract between Walsh and Oryx, includes the rate for the safety technician and medic. Walsh was to "perform daily safety inspection[s]," "perform daily inspection[s] of the emergency and escape equipment," "perform safety briefing for new arrivals per contractor's safety policy," and "provide on site medical care to the sick and injured." Plaintiff's Response at Exhibit B.

A significant, if not sole, purpose in Oryx's retaining of Walsh was enhancement of the rig or platform's safety. As a result, when Oryx contracted with Walsh for the provision of these services, Mote acquired them vicariously. Mote therefore is a consumer of Walsh's services.[5]

### IV. Recommendation

Defendant Webster's Amended Motion to Dismiss should be granted in part.

Defendant Walsh Offshore Inc.'s Motion to Dismiss should be denied.

### V. Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–277 (5th Cir.1988).

SIGNED this 18 day of August, 1995.

---

**5.** Although such issue is not raised by defendant, mere breach of contract is not actionable under DTPA unless it is coupled with affirmative misrepresentations rising to the level of breach of warranty. *La Sara Grain v. First National Bank of Mercedes*, 673 S.W.2d 558 (Tex.1984). Specific representations are absent from plaintiff's complaint and other pleadings, therefore the undersigned does not attempt to analyze the issue.