**Affirmed and Memorandum Opinion filed August 11, 2016.**



In the

# Fourteenth Court of Appeals

## NO. 14-15-00078-CV

**STERLING INTERESTS INVESTMENTS, INC. D/B/A ELITE COLLISION CENTER, Appellant**

**V.**

**C.C. AUTO BROKERS, INC., Appellee**

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 978206**

## M E M O R A N D U M   O P I N I O N

Sterling Interests Investments, Inc. d/b/a Elite Collision Center (Elite) appeals from a final judgment in favor of C.C. Auto Brokers, Inc. (C.C. Auto), on its Deceptive Trade Practices and Consumer Protection Act (DTPA) claim in connection with vehicle repairs. Elite brings three issues on appeal. First, Elite argues the trial court erred by concluding that C.C. Auto was a consumer under the DTPA. Second, Elite contends the evidence is legally insufficient to support the

jury findings that Elite knowingly committed a violation of the DTPA. Finally, Elite requests, should this court reverse, that the case be remanded to decide the issue of attorney's fees Elite incurred in defending C.C. Auto's frivolous suit. We affirm and do not reach Elite's conditional issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Danny Carlin, the owner of C.C. Auto, purchased a 1998 Toyota 4Runner at auction and had it inspected and reconditioned for sale. The vehicle "drove great" and had a clean Carfax report indicating no prior damage. Michelle Gay purchased the 4Runner from C.C. Auto on January 22, 2008. Gay also financed the vehicle through C.C. Auto. Gay reported no problems driving the vehicle.

On February 28, 2008, while driving the 4Runner, Gay was involved in an accident. The main impact was on the driver's side. The vehicle was taken by an Elite tow truck to Elite's facility. Gay, who was insured with United Automobile Insurance Company, authorized Elite to perform repairs. Elite provided Gay with a rental car.

In early April 2008, Gay informed Carlin that the 4Runner had been in an accident and that she was not able to make payments on her note or afford the repairs. Carlin suggested that Gay return the vehicle to C.C. Auto for resale. Gay agreed and on April 9, 2008, executed an affidavit of repossessed motor vehicle for the 4Runner. Carlin then attempted to contact Elite to ascertain the status of the repairs.

Elite provided a list of charges dated April 24, 2008 to C.C. Auto. These charges included storage fees, repairs, rental car, towing, and "gas & clean up." Carlin called Elite and was informed that the vehicle was properly repaired and "ready to go." Carlin obtained a cashier's check from C.C. Auto's bank in the

amount of $4,477.37 to pay Elite and obtain the 4Runner. On April 30, 2008, Carlin went to Elite to pick up C.C. Auto's vehicle. Elite assured Carlin that the vehicle was okay and "ready to go." Before he was able to see the vehicle, Elite had Carlin pay and sign a hold harmless agreement. The vehicle was "empty" so Carlin asked about the closest gas station. Within 30 yards of driving off the lot, however, the passenger front tire was rubbing the tire shroud and the vehicle was pulling. Carlin returned to Elite because the vehicle was not safe to drive and informed Elite about the issues. Carlin left the 4Runner with Elite.

Elite left Carlin a message stating that it would not perform additional repairs. Carlin returned the call and told Elite that the vehicle needed to be returned to its original state. Elite again told Carlin that it would not do any more repairs.

After Elite had the 4Runner towed and impounded, Carlin retrieved it. Carlin paid an additional $501.29 in towing and storage charges.[1] Carlin hired an independent insurance adjuster with over 40 years' experience, James McWilliams, to inspect the vehicle and provide an opinion about Elite's repairs. Based on his inspection of the 4Runner and his review of Elite's estimate, McWilliams concluded that Elite did not perform some of its repairs adequately. Some of the inadequate repairs included: using a zip tie instead of a bolt to connect two metal parts; installing an incorrect fender part; not properly lining up the gap between the fender and the hood resulting in a hood dent; not replacing a charged-for core support; improperly mounting a headlight because the core support panel was not properly straightened; not installing charged-for molding; improperly mounting the bumper; and not catching the problem of the misaligned front end causing the tire

---

[1] United ultimately reimbursed C.C. Auto for a total of $2,555.79 in connection with the insurance claim on the 4Runner.

to rub. McWilliams estimated that an additional $2,135.40 in repairs was necessary to correct Elite's defective work and to make the 4Runner safe and ready to sell.

C.C. Auto filed suit against Elite on its behalf and as assignee on Gay's behalf for negligence, conversion, and DTPA violations.[2] Elite filed a pretrial motion pursuant to Texas Rule of Civil Procedure 248 contesting C.C. Auto's standing as a consumer for purposes of the DTPA. The trial court denied Elite's motion. At the time of trial, only C.C. Auto's DTPA claim remained. The jury found: (1) Elite engaged in a false, misleading, or deceptive act or practice that C.C. Auto relied on to its detriment and that was a producing cause of damages to C.C. Auto; and (2) Elite engaged in such conduct knowingly. The jury awarded C.C. Auto $3,830.89 as fair and reasonable compensation for its damages that resulted from such conduct. The jury did not award any additional damages. The jury also awarded $22,500 as a reasonable fee for the necessary services of C.C. Auto's attorney. The trial court entered a final judgment consistent with the verdict. Elite filed a motion for new trial[3] and a notice of appeal.

## II. ANALYSIS

### A. Consumer status of C.C. Auto

In its first issue, Elite argues that C.C. Auto did not qualify as a "consumer" of the repairs transaction and therefore had no standing to pursue a DTPA claim.

A plaintiff must prove his status as a consumer to bring an action and recover under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.50 (West 2011); *Eckman v. Centennial Sav. Bank*, 784 S.W.2d 672, 674 (Tex. 1990); *Clark Equip.*

---

[2] The original petition also included Gay as a plaintiff. Gay later nonsuited her claims.

[3] The record does not reflect that the trial court ruled on this motion.

4

*Co. v. Pitner*, 923 S.W.2d 117, 127 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (citing *Eckman*, 784 S.W.2d at 674). To establish consumer status, a party must have sought or acquired goods or services by purchase or lease, and the goods or services purchased or leased must form the basis of the DTPA complaint. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987) (citing *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex. 1987), and *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981)); *Collums v. Ford Motor Co.*, 449 S.W.3d 189, 191 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see* Tex. Bus. & Com. Code Ann. §§ 17.45(1) (defining "goods" as "tangible chattels or real property purchased or leased for use"), 17.45(2) (defining "services" as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods"), 17.45(4) (defining "consumer" as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services") (West 2011). Standing does not depend on privity of contract, but rather on the plaintiff's relationship to the transaction. *See Kennedy v. Sale*, 689 S.W.2d 890, 893 (Tex. 1985); *Clark Equip.*, 923 S.W.2d at 127–28. Whether a party is a consumer under the DTPA is a question of law. *See Collums*, 449 S.W.3d at 193.

Elite contends that C.C. Auto only prosecuted the case as Gay's assignee. In *PPG Industries, Inc. v. JMB/Houston Centers Partners Ltd. Partnership*, the Supreme Court of Texas concluded that generally DTPA claims cannot be assigned by an aggrieved consumer to someone else. 146 S.W.3d 79, 91–92 (Tex. 2004); *Wright v. Sydow*, 173 S.W.3d 534, 551 n.15 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *PPG Indus.*, 146 S.W.3d at 91). The Court highlighted the personal aspect of the DTPA and expressed concern that assignments could

5

skew the litigation process. *See PPG Indus.*, 146 S.W.3d at 91–92.

Although in its live petition C.C. Auto asserted a DTPA claim "as the assignee of" Gay, C.C. Auto also asserted a DTPA claim "on its behalf." At trial, C.C. Auto presented evidence of a personal DTPA claim based on its own acquisition of repair goods and services from, and direct interactions with, Elite. Accordingly, the jury was charged and returned its verdict based on C.C. Auto's individual DTPA claim against Elite, not on any assigned DTPA claim of Gay. Under these circumstances, we conclude that *PPG Industries* does not apply to merit reversal here.

Elite further argues that at most C.C. Auto was an incidental beneficiary of the repairs transaction and therefore cannot be considered a consumer. A plaintiff who is merely an incidental beneficiary of a transaction does not have consumer status under the DTPA. *See, e.g., Guest v. Cochran*, 993 S.W.2d 397, 408 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (will beneficiaries were not consumers of legal services provided to testator); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 407–08 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.) (estate beneficiaries were not consumers of legal services provided to executors).

However, the trial evidence reflects that C.C. Auto's relationship to the repairs transaction with Elite was not "merely incidental." The main purpose of the repairs transaction with Elite was to obtain a properly repaired vehicle. During the course of the repairs transaction with Elite, C.C. Auto forgave Gay's debt on, repossessed, and resumed its ownership of the 4Runner. Elite knew that, although the repairs transaction was initiated by Gay, it would not be concluded by her, but rather by C.C. Auto. C.C. Auto had direct dealings with Elite relating to the repairs on the vehicle. C.C. Auto directly stood to benefit from the quality of Elite's repairs so that C.C. Auto could resell its vehicle in a safe, drivable state.

6

And C.C. Auto personally paid for some of the charges associated with Elite's repairs.

Having reviewed the record, we conclude that C.C. Auto is a consumer for purposes of the DTPA. We overrule Elite's first issue.

## B. Legal sufficiency of evidence supporting the jury's DTPA findings

In its second issue, Elite argues there is no evidence or legally-insufficient evidence supporting the jury's findings that Elite knowingly engaged in a false, misleading, or deceptive act or practice that C.C. Auto relied on to its detriment and that was a producing cause of C.C. Auto's damages.

Initially, we address whether Elite preserved these legal-sufficiency complaints. A no-evidence or legal-sufficiency issue is preserved for appeal in one of five ways: (1) a motion for directed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 390 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991).

Elite contends that it preserved its legal-sufficiency challenges when it moved for directed verdict at the close of C.C. Auto's case. However, the record reflects that the sole basis for Elite's motion for directed verdict was its argument that C.C. Auto had not demonstrated its consumer status under the DTPA. The motion for directed verdict was not based on any argument challenging the legal sufficiency of the evidence to support any findings of a knowing DTPA violation. Nor does our review of the record reveal that Elite preserved its legal-sufficiency challenges in any other way. At the close of Elite's case, Elite "reurged" and

7

"reasserted" its motion for directed verdict "on the same basis." Elite did not lodge any objections to the jury charge. Elite did not file a motion for judgment notwithstanding the verdict to attack the jury's DTPA findings. And although Elite filed a motion for new trial, again, its only ground was that "[t]he evidence does not support that [C.C. Auto] meets the threshold requirements of being a consumer eligible to bring a claim under the DTPA." As such, we conclude that Elite failed to preserve its legal-sufficiency challenges to the jury's findings regarding Elite's knowingly engaging in a false, misleading, or deceptive act or practice that C.C. Auto relied on to its detriment. *See Solutioneers Consulting*, 237 S.W.3d at 390.[4]

We therefore overrule Elite's second issue.

Having determined reversal is not warranted, we do not reach Elite's conditional third issue. *See* Tex. R. App. P. 47.1.

### III.     CONCLUSION

Accordingly, we affirm the trial court's final judgment.

/s/     Marc W. Brown
Justice

Panel consists of Justices Jamison, Donovan, and Brown.

---

[4] Elite's briefing does not present any factual-sufficiency challenge. Elite expressly prays that the court reverse and render in connection with its first two issues and only conditionally requests remand for a determination of its attorney's fees. In any event, Elite did not raise any factual-sufficiency issue in connection with the jury's DTPA findings in its motion for new trial and therefore failed to preserve any such issue. *See* Tex. R. Civ. P. 324(b)(2); Tex. R. App. P. 33.1; *Cecil*, 804 S.W.2d at 510–11; *Halim v. Ramchandani*, 203 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.] 2006, no pet.).