**The STATE OF TEXAS**

v.

**The AMERICAN TOBACCO COMPANY, et al.**

**No. 5–96CV–91.**

United States District Court,
E.D. Texas,
Texarkana Division.

Sept. 8, 1997.

958

John M. O'Quinn, Kendall Charles Montgomery, O'Quinn & Laminack, Houston, TX, Wayne A. Reaud, Reaud, Morgan & Quinn, Beaumont, TX, Ronald L. Motley, Ann Kimmel Ritter, Jodi Westbrook Flowers, Susan Nial, Charles W. Patrick, Jr., Frederick C. Baker, William M. Gruenloh, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, Greg Thompson, Thomas Walter Umphrey, Provost & Umphrey, Beaumont, TX, A. Paul Miller, Miller, James, Miller, Wyly & Hornsby, Texarkana, TX, Hugh Edward McNeely, Provost & Umphrey Law Firm, LLP, Port Arthur, TX, Harold Wayne Nix, Edward Lewis Hohn, Jeffrey John Angelovich, Nix Law Firm, Daingerfield, TX, Donald Gerard Wilhelm, Houston, TX, John Eddie Williams, Jr., Williams Bailey, Houston, TX, Laurence H. Tribe, Cambridge, MA, Harry Grant Potter, III, Assist. Atty. General, Atty. General's Office, Austin, TX, David Grant Kaiser, Kaiser & Morrison, PC, Houston, TX, Paul N. Bartlett, Jr., San Antonio, TX, Alexandra M. Wagner, Ness, Motley, Loadholt, Richardson, Charleston, SC, Lee E. Young, Charles J. Mikhail, Scruggs, Millette, Lawson, Bozeman & Dent, Pascagoula, MS, Paul J. Doolittle, Jerry Evans, Ness, motley, Loadolt, Richardson & Poole, Greenville, SC, Robert Blakey, Notre Dame Law School, Notre Dame, IN, J. Anderson Berly, III, Charleston, SC, Charles Silver, University Law School, Austin, TX, Marc D. Murr, Houston, TX, Jonathan S. Massey, Washington, DC, Michael E. Tigar, Washington College & Law, Washington, DC, for State of Texas.

James N. Haltom, George L. McWilliams, Patton, Haltom, Roberts, McWilliams & Greer, LLP, Texarkana, TX, Paul Edward Stallings, Vinson & Elkins, Houston, TX, for American Tobacco Co.

Thomas E. Fennell, Mark R. Hall, Michael Lyn Rice, Randolph L. Burns, Michael C. Streiter, Cynthia M. Callcott, Kelly J. Hunt, Jones, Day, Reavis & Pogue, Dallas, TX, Victor F. Hlavinka, James Dennis Chambers, Alan David Harrel, Hiram Howard Waldrop, Atchley, Russell, Waldrop & Hlavinka, Texarkana, TX, Robert D. Burton, Jones, Day, Reavis & Pogue, Atlanta, GA, Morris Atlas, Atlas & Hall, LLP, McAllen, TX, Nicholas H. Patton, Patton, Tidwell, Sandefur & Paddock, Texarkana, TX, Jonathan M. Engram, Womble, Carlyle, Sandridge & Rice, Winston-Salem, NC, Walter Joshua Crawford, Jr., Crawford & Olesen, LLP, Beaumont, TX, Denise Fee, Robert F. McDermott, Jr., Geoff Beach, Gregory G. Katsas, Jones, Day, Reavis & Pogue, Washington, DC, for R.J. Reynolds Tobacco Co.

George L. McWilliams, Patton, Haltom, Roberts, McWilliams & Greer, LLP, Texarkana, TX, Paul Edward Stallings, Vinson & Elkins, Houston, TX, Todd Gale, Bradley E. Lerman, David M. Bernick, Michelle Browdy, Steven D. McCormick, Ram Padmanabhan, Kirkland & Ellis, Chicago, IL, Bruce Sheffler, Tom Bezanson, William Schrier, Chadbourne & Park, New York City, Marjo-

rie Press Lindblom, Kirkland & Ellis, New York City, for Brown & Williamson Tobacco Corp.

Damon Young, Young, Kesterson & Pickett, Texarkana, TX, John J. Kenney, Adam I. Stein, Simpson, Thacher & Bartlett, New York City, Mark G. Cunha, Tracher & Bartlett, New York City, for B.A.T. Industries, P.L.C.

Victor F. Hlavinka, James Dennis Chambers, Alan David Harrel, Hiram Howard Waldrop, Atchley, Russell, Waldrop & Hlavinka, Texarkana, TX, Dan K. Webb, George C. Lombardi, Timothy O'Connor, Winston & Strawn, Chicago, IL, Michael Scott Hull, Maroney, Crowley, Bankston, Richardson & Hull, Austin, TX, Charles C. Lemley, Steven Lockman, Thomas E. Silfen, Arnold & Porter, Washington, DC, Nicholas H. Patton, Patton, Tidwell, Sandefur & Paddock, Texarkana, TX, James E. Scarboro, Thomas W. Stoever, Arnold & Porter, Denver, CO, Lonnie Dayton Nunley, III, Hunton & Willaims, Richmond, VA, Lawrence Louis Germer, Germer & Gertz, Beaumont, TX, Allen R. Purvis, John C. Monica, Jr., Shook, Hardy & Bacon, Washington, DC, Janet L. Johnson, Julia J. Tyler, Johnson & Tyler, Washington, DC, Alf McDonnell, Arnold & Porter, Denver, CO, Stephen C. Bruner, Winston & Strawn, Chicago, IL, Barclay A. Manley, Fulbright & Jaworski, Hoston, TX, for Philip Morris, Inc.

Jerry L. Mitchell, Jr., Ellen B. Malow, Kasowitz, Benson, Torres & Friedman, LLP, Houston, TX, for Liggett Group, Inc.

Robert A. Gwinn, John R. Musgrave, Richard P. Cassetta, Gwinn & Roby, Dallas, TX, Donald J. Kemna, Clyde W. Curtis, William L. Allinder, Gene E. Voigts, Anthony J. Andrade, Gregory L. Fowler, Samuel B. Sebree, Shook, Hardy & Bacon, Kansas City, MO, J. William Newbold, coburn & Croft, St. Louis, MO, Carl L. Rowley, Richard S. Cornfield, Michael B. Minton, Thompson Coburn, St. Louis, MO, for Lorillard Tobacco Co., Inc.

Arthur F. Fama, Jr., Michael J. Balch, Peter J. McKenna, Eric S. Sarner, Skadden, Arps, Slate, Meagher & Flom, New York City, Kelly B. Tidwell, Nicholas H. Patton, Patton, Tidwell, Sandefur & Paddock, Texarkana, TX, for U.S. Tobacco Co.

Winford L. Dunn, Jr., Dunn, Nutter, morgan & Shaw, Texarkana, TX, Bruce Ginsberg, Andrew D. Herz, Davis & Gilbert, New York City, for Hill & Knowlton, Inc.

Mark W. Lowes, William key Wilde, Bracewell & Patterson, Houston, TX, Dennis Hranitzky, Steven Klugman, Debevoise & Plimpton, New York City, for Council for Tobacco Research–USA, Inc.

Lea F. Courington, Scott william MacLaren, Benton Jordan Barton, Gwinn & Roby, Dallas, TX, for Tobacco Institute, Inc.

## MEMORANDUM OPINION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS COUNTS 1–3 AND COUNTS 4–17 OF THE STATE'S SECOND AMENDED COMPLAINT

FOLSOM, District Judge.

CAME ON TO BE CONSIDERED this day Defendants' Motions to Dismiss Counts 1–3 (docket entry # 50) and Counts 4–17 (docket entry # 194) of the State's Second Amended Complaint.[1] The Court held oral argument on April 14, 1997. After reviewing the motions, the responses, and the replies, the Court finds the motions are well taken in part as explained in the following opinion.

### I. BACKGROUND

The State of Texas ("State") brought this suit seeking to recover costs incurred in providing medical care and other benefits to its citizens, including costs associated with the Medicaid program, as the result of the citizens' use of cigarettes and smokeless tobacco products. Defendants are tobacco companies and public relations firms.[2] The State's Sec-

---

1. Defendants filed two motions to dismiss. The first motion seeks to dismiss the R.I.C.O. allegations in counts 1–3 of the First Amended Complaint. The second motion seeks dismissal of the balance of the State's claims, being counts 4–14 of the First Amended Complaint. Subsequent to their filing these motions, the State filed its Second Amended Complaint on April 7, 1997. At the hearing on these motions, Defendants addressed their argument to the Second Amended Complaint.

2. Specifically, the defendants are The American Tobacco Company; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; B.A.T. Industries, p.l.c.; Philip Morris,

ond Amended Complaint seeks to impose liability against Defendants for their manufacturing, advertising, distributing and selling tobacco products in the United States. In response to the allegations, Defendants filed motions to dismiss the complaint contending the State's claims fail for several reasons.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) seeks dismissal of a plaintiff's cause of action for failure to state a claim upon which relief may be granted. A motion to dismiss for failure to state a claim admits the facts alleged in the complaint but challenges the plaintiff's right to relief based upon the facts. *Crowe v. Henry,* 43 F.3d 198, 203 (5th Cir.1995). "[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1357 at 321 (1990). Professors Wright and Miller go on to note that "courts are reluctant to dispose of [a] complaint on technical grounds in view of the policy of the federal rules to determine actions on their merits." *Id.* at 323–24. "Summary disposition of litigation ... is disfavored ... [A] motion to dismiss on the basis of the pleadings alone should rarely be granted." *Cliff Food Stores, Inc. v. Kroger, Inc.,* 417 F.2d 203, 205 (5th Cir.1969). The Fifth Circuit has observed that "dismissal of a claim on the basis of barebones pleadings is a 'precarious disposition with a high mortality rate.'" *Kaiser Aluminum, Etc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982) *quoting Barber v. Motor Vessel "Blue Cat,"* 372 F.2d 626, 627 (5th Cir.1967).

The Supreme Court has held that "[i]n appraising the sufficiency of the complaint ... the accepted rule [is that] a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In determining whether a complaint withstands a 12(b)(6) motion to dismiss, the court "must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. Also, the court may not look beyond the pleadings in ruling on motion." *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996).

## III. ARGUMENT

Before moving for the dismissal of individual claims, Defendants put forth several arguments advocating dismissal of the action as a whole. Defendants claim the suit cannot proceed as a direct action, because the State's exclusive remedy is through assignment/subrogation pursuant to § 32.033 of the Texas Human Resources Code. Defendants also contend that the State's suit, arising from personal injuries or death allegedly caused by the consumption of tobacco products, has been barred by the Texas legislature with its enactment of the Product Liability Act in 1993. Defendants further contend that the State has not suffered a direct injury, and thus cannot recover because its injury is too remote. Finally, Defendants assert that the State's direct action violates fundamental principles of due process. The Court rejects these arguments based on the following analysis.

## A. SUBROGATION AS THE STATE'S EXCLUSIVE REMEDY

The State is seeking in this suit to recover payments made through its Medicaid program for health care provided to recipients for injuries allegedly caused by the consumption of tobacco products. In order to participate in the Medicaid program, a state must submit for approval a plan dealing with how to provide medical assistance under the program. *See* 42 U.S.C. § 1396. Each plan must include certain provisions that are mandated by the federal government. One of these provisions requires that a state "take all reasonable measure to ascertain the legal liability of third parties ... to pay for care and services available under the plan...." 42 U.S.C. § 1396a(a)(25)(A). In addition, the statute requires that if "liability is found to exist[.] ... the State or local agency will

Inc.; Liggett Group, Inc.; Lorrillard Tobacco Company, Inc.; United States Tobacco Company; Hill & Knowlton, Inc.; The Council for Tobacco Research–USA, Inc. (Successor to Tobacco Institute Research Committee); and the Tobacco Institute, Inc.

seek reimbursement ... to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25)(B). Finally, Congress has required the states to "provide for mandatory assignment of rights of payment for medical support or other care owed to recipients...." 42 U.S.C. § 1396a(a)(45).

In accordance with these provisions, the State of Texas has enacted a provision entitled "Subrogation" that provides that "[t]he filing of an application for or receipt of medical assistance constitutes an assignment of the applicant's ... right of recovery from ... another person for personal injury caused by the other person's negligence or wrong." TEX.HUM.RES.CODE ANN. § 32.033(a)(3). In addition, the statute provides:

> A separate and distinct cause of action in favor of the state is hereby created, and the department may, without written consent, take direct civil action in any court of competent jurisdiction. A suit brought under this section need not be ancillary to or dependent upon any other action.

TEX.HUM.RES.CODE ANN. § 32.033(d).

Defendants argue that the provisions of § 32.033 provides the State with its exclusive remedy to recover Medicaid expenses. They base this position on caselaw from the Texas Supreme Court, court rules of statutory construction, and their reading of § 32.033. The State argues that its authority to bring this suit is rooted in the common law, and that this authority has not been supplanted by § 32.033. The State also argues that the caselaw cited by the Defendants is distinguishable, and the language of § 32.033 does not evidence an intent on the part of the Texas legislature to provide an exclusive remedy.

█ The Court must start with the question of whether the State could maintain this action at common law in the absence of any statutory provision. In other words, if the Medicaid statute did not require the states to seek reimbursement, could a state proceed as the State of Texas has in this matter? Based on the Supreme Court's decision in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S.

592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), the Court concludes that the State could bring such an action.

In *Snapp*, the Supreme Court was faced with the question of whether Puerto Rico had standing to maintain an action that alleged its citizens had been discriminated against in contravention of various federal employment laws. *Id* at 594, 102 S.Ct. 3260. In finding that such an action could be maintained, the Court discussed in depth "quasi-sovereign" interests and the utilization of these interests as a basis for states to bring suit in the absence of statutory authority.

Quasi-sovereign interests are to be distinguished from a state's general sovereign or proprietary interests. "They consist of a set of interests that the State has in the well-being of its populace." *Id.* at 602, 102 S.Ct. 3260. These interests can related to either the physical or economic well-being of the citizenry. *Id.* at 607, 102 S.Ct. 3260. It is without question that these interests can evolve and change with time, and as such, the Court made very clear its desire to maintain a definition that is conducive to a case-by-case analysis. The only hard and fast rule set forth by the Court is that a State may not invoke this doctrine when it is only a nominal party asserting the interests of another. *Id.*

In the instant case, the Court finds that the State has set forth a sufficient interest to maintain an action in its quasi-sovereign capacity. First, it is without question that the State is not a nominal party to this suit. The State expends millions of dollars each year in order to provide medical care to its citizens under Medicaid. Furthermore, participating in the Medicaid program and having it operate in an efficient and cost-effective manner improves the health and welfare of the people of Texas.[3] If the allegations of the complaint are found to be true, the economy of the State and the welfare of its people have suffered at the hands of the Defendants. *See Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945) (quasi-sovereign interests of state in economic prosperity and public welfare provided grounds to maintain antitrust action). It is

---

**3.** It should be noted that Texas state courts have also recognized that quasi-sovereign interests allow states to bring actions where the health and welfare of its people are at sake. *See Bachynsky*

*v. State,* 747 S.W.2d 868 (Tex.App.—Dallas 1988, denied) (discussing the principles enunciated in *Snapp* ).

clear to the Court that the State can maintain this action pursuant to its quasi-sovereign interests found at common law.[4]

■ Having decided that quasi-sovereign interests are at stake in this suit, the Court must next address whether the State's common law action has been supplanted by a statutory remedy that should be deemed exclusive. The crux of the Defendants' argument is that any common law action the State may have had [5] can no longer be pursued, because the Texas legislature has provided the State with its exclusive remedy which is found in § 32.033 of the Texas Human Resources Code. *See State v. Rubion,* 158 Tex. 43, 308 S.W.2d 4 (1957) (holding that when a statute provides a cause of action, that action is exclusive). This principle derives from the rule of statutory construction *expressio unius est exlusio alterius.* In other words, if one thing is implied, it is implied to the exclusion of all others. *See Quarles v. St. Clair,* 711 F.2d 691, 699 (5th Cir.1983). In further support of this position, Defendants cite the Court to *Wiseman v. State,* 94 S.W.2d 265 (Tex.Civ.App.1936, writ refused).

*Wiseman* involved an attempt by the State of Texas to recoup funds from the estate of an insane individual. These funds had been expended to provide hospital confinement to the insane pursuant to state legislation. The State argued first that it had a common law right to recover these funds from the estate. The Supreme Court of Texas rejected this argument and stated that the right to reimbursement only existed pursuant to statute. *Wiseman,* at 266. The court went on to hold that the statutory framework that provided for the recovery of these funds was the cumulative and exclusive remedy for the State. *Id.* at 267. Defendants state that *Wiseman* controls this case, and therefore the State must utilize section 32.033 as its exclusive remedy.

The State asserts that the rule laid down in *Wiseman* should not apply in this case essentially for two reasons. First, it argues that the case is distinguishable, because the State attempted to recover funds from an "innocent" party, the estate of an insane individual, rather than a tortfeasor. The State argues that because no negligent or intentional harm was inflicted upon the State, *Wiseman* should not apply. Second, the State points to the rule of statutory construction which states that a "legislative grant of a new right does not ordinarily cut off or preclude other nonstatutory rights in the absence of clear language to that effect." *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969). This statement, it is argued, directly contravenes the Defendants' position that *Wiseman* and *expressio unius* govern this case.

Although the Court recognizes and agrees that there are important factual distinctions between this case and *Wiseman,* the focus for purposes of deciding the exclusivity issue

---

4. The Defendants have also alleged that the Supreme Court's decision in *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), forecloses the State's action to recover medical expenses. In *Standard Oil,* the Court held that the federal government could not recover funds expended to treat a soldier that had been injured in an accident that involved the defendant. The Court stated that there was not a federal common law right to bring a direct action against the defendant. *Id.* at 314, 67 S.Ct. 1604.

The Court is not persuaded that *Standard Oil* controls this case. First, it involved the federal government rather than a state. The Court notes that quasi-sovereign interests have never been held to be the basis for a suit brought by the federal government. However, as noted above, the Supreme Court has recognized that the States have such interests. Second, quasi-sovereign interests only arise when a significant por-

tion of the populace is affected. *See Snapp,* at 607, 102 S.Ct. 3260. *Standard Oil,* only involved one citizen. Clearly this would not give rise to a cause of action based on quasi-sovereign interests.

5. In their reply brief, the Defendants acknowledge what the Court has already determined— that the State has, in certain circumstances, the right to proceed under the common law. Defendants' Reply Brief in Support of Their Motion to Dismiss, at p. 15. However, in their initial brief, the Defendants state that if the State possesses a common law right to recover the expenditures at issue in this case, "it would not have been necessary for the Texas legislature to 'create' a cause of action . . ." Defendants Brief in Support of Their Motion to Dismiss, at p. 12. There is a simple answer for the Defendants' concern. The legislature enacted § 32.033, because they were directed to do so pursuant to 42 U.S.C. § 1396a(a)(45).

must center on the utilization of *expressio unius* in this case. The Supreme Court has instructed that *expressio unius* must be abandoned when it would frustrate the general purpose of a statute or its provisions. *Silver v. New York Stock Exchange,* 373 U.S. 341, 357, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), *quoted in Herman & MacLean v. Huddleston,* 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Keeping this in mind, courts should apply this maxim warily, *U.S. I.N.S. v. Federal Labor Relations Authority,* 4 F.3d 268 (4th Cir.1993). The rule is problematic, because it assumes that a legislative body considers all conceivable issues that may arise and seeks to address them all by only addressing a few. *See National Petroleum Refiners Assn. v. Federal Trade Commission,* 482 F.2d 672 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974). This practice is considered questionable because specific intent is inferred from silence. *See* Cass R. Sunstein, *Law and Administration After Chevron,* 90 Colum.L.Rev.2071, 2109 n. 182 (1990).

It is clear from these cases and commentary that in order to construe these statutory provisions under either maxim proposed by the parties, the Court must at all times be mindful of their purpose. Upon reading 42 U.S.C. § 1396a(a)(25)(A) and (B); 42 U.S.C. § 1396a(a)(45); the applicable regulations; and, § 32.033 of the Texas Human Resources Code, it is without question that their purpose is to require states such as Texas to recover money spent that can be attributed to the wrongs of third-parties in an efficient and cost effective manner.[6] The Court is convinced that an application of *expressio unius* would frustrate this purpose.

As noted above, the Defendants would have this Court direct that the State bring individual subrogation claims pursuant to § 32.033. Although this approach may be preferred in situations where a single tortfeasor inflicts a one-time harm against a single individual who receives Medicaid benefits, the practical consequence of the Defendants' position would be to prohibit a state from ever instituting a suit that alleges a broad based harm to millions of citizens. It would be impractical, if not impossible, for the states to follow the mandates of the Medicaid statute's reimbursement provisions, because proceeding on a claim-by-claim basis would be cost prohibitive and inefficient.

The Court finds further support for this position in the New Jersey Supreme Court's decision in *Hedgebeth v. Medford,* 74 N.J. 360, 378 A.2d 226 (1977). *Hedgebeth* was also a Medicaid reimbursement case in which the 42 U.S.C. § 1396a(a)(25) and New Jersey's reimbursement statute were analyzed to determine how the State of New Jersey could proceed against a third party. The New Jersey provision at issue clearly provided for subrogation.[7] *Id.* at 228. However, nowhere in the statute was there any indication that an independent direct action could be brought by the State. The court determined that the State could pursue either of "two avenues" in seeking reimbursement. *Id.* It could proceed through subrogation or institute an action directly against an alleged tortfeasor.

The court began its analysis by reading the federal and state provisions together. The court found instructive the fact that the federal government was allowed to pursue a direct action to recover funds expended pursuant to programs such as Medicaid.[8] Also, it looked at the mandatory nature of the federal statute that directed the State to seek reimbursement. Based on these two points, the court held that the subrogation portion of the New Jersey statute was merely a "precautionary measure" instituted by the legislature that did not replace or limit in any way the manner in which the State could otherwise proceed. In this Court's opinion, the *Hedgebeth* decision is consistent with and furthers the purpose of the Medicaid reimbursement provisions.

---

**6.** *See* 42 C.F.R. § 433.139(f) (stating that reimbursement must be pursued but may be suspended or terminated only if the efforts are not cost effective).

**7.** In this matter, § 32.033 is entitled "Subrogation." However, the State is correct that the title

of the statute alone does not support a conclusion that subrogation is the only remedy available. *See* Tex Gov't.Code Ann. § 311.024 (stating that the title of a statute does not expand or limit the meaning of the statute).

**8.** *See* 42 U.S.C. § 2651.

Based on the foregoing discussion, the Court rejects the application of *expressio unius* to § 32.033 of the Texas Human Resources Code. Because this maxim was the basis for the court's decision in *Wiseman,* that case is also rejected.

To summarize, the Court concludes that the manner in which the State seeks to proceed is rooted in the common law. To prevent the State from proceeding in the present manner does not further the purpose of the Medicaid reimbursement provisions, rather it hinders it. To adopt the Defendants' position, this Court would have to determine that Congress and the Texas legislature anticipated the reimbursement issues raised by this case, considered the existence of the State's common law cause of action, and determined that a subrogation remedy would be the best way to proceed in all instances. This is too much to ask. The State's position that the presence of a statutory right normally does not extinguish non-statutory rights is more consistent with the spirit of the reimbursement provisions of the Medicaid statute. The Texas legislature has not clearly evidenced an intent to create an exclusive remedy in § 32.033. Therefore, the Court finds that the statute does not provide the State with its exclusive remedy.[9]

## B. TEXAS PRODUCT LIABILITY ACT

 Defendants contend that the State's attempt to create a direct action fails because the Texas Products Liability Act ("the Act") bars lawsuits arising from personal injuries or death allegedly caused by the consumption of tobacco products. Under the Act, a manufacturer or seller is not liable for a marketing or design defect claim if the product in question is a common consumer product that is inherently unsafe and the consumer knows it to be inherently unsafe. This argument rests on the premise that the State's alleged injuries are derivative of the claims of the individual smokers' claims and as such are barred by the language of the Act.[10]

The State alleges strict products liability, breach of express and implied warranty, negligence, fraud, and misrepresentation among its theories of liability pled in the Second Amended Complaint.[11] Defendants claim that the Act establishes a broad prohibition against tobacco-related suits. Section 82.004(a) of the Texas Civil Practice and Remedies Code states that "in a products liability action, a manufacturer or seller shall not be liable" if:

(1) the product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and (2) the product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco and butter as identified in Comment I to section 402A of the Restatement (Second) of Torts.

TEX.CIV.PRAC. & REM.CODE ANN. § 82.004(a).

The Act defines "product liability action" as

any action against a manufacturer or seller for recovery of damages arising out of personal injury, death or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theories or combination of theories.[12]

TEX.CIV.PRAC. & REM.CODE § 82.001(2).

Defendants contend that because the State's claim for damages arise out of per-

9. The Court should mention that there has been a great deal of discussion regarding the language of § 32.033(d), quoted above. The Court need not address this issue other than to reiterate what has been stated previously that the common law provides the State with an independent direct action and § 32.033 does not supplant it.

10. TEX CIV PRAC & REM.CODE ANN. § 82.001–.006 (West Supp.1997). Defendants state that "[i]t is uncontrovertible that the State's claim for damages 'arise out of' personal injuries or death allegedly caused by tobacco products." Defendants Brief in Support of Their Motion to Dismiss, at p. 18.

11. Defendants contend that the Act would serve to bar the causes of action alleged in Counts 5–17 of the State's Second Amended Complaint.

12. The term "product liability action" does not include an action based on manufacturing defect or breach of an express warranty. Section 82.004(b). The Second Amended Complaint does not contain a manufacturing defect claim,

sonal injuries or death allegedly caused by tobacco products, the "inherently unsafe" product defense found in § 82.004 bars the claims the State is asserting here. In response, the State cites three reasons for the Act's not barring the instant case.[13] The Court finds two of the reasons persuasive and denies Defendants' motion to dismiss based on the Act.

The State contends that the Act does not apply to any of its direct claims against Defendants, such as fraud and misrepresentation, because those claims are not product liability claims within the meaning of the Act as they do not arise out of personal injury, death or property damage but out of an infringement against the sovereign. As stated in Section I(A), *supra,* the Court finds that the State may maintain this action in its quasi-sovereign capacity to protect the physical and economic well-being of its citizenry. The claims are not brought by the injured consumer. As such, the Court is not persuaded that this action is a "production liability action" within the meaning of the Act, and thus is not barred by the Act.

The State argues, alternatively, that even if the State's claims did arise out of the personal injury allegedly sustained by individual smokers, the "inherently unsafe" product defense does not apply when a manufacturer or seller has suppressed material information relevant to a product's safety, so that the ordinary consumer does not possess full knowledge of the product's inherent dangerousness. According to the allegations in the Second Amended Complaint. Defendants suppressed information that estab-

lishes the addictive nature of cigarettes and engaged in a conspiracy to spread disinformation about the ill effects of cigarette smoking.[14]

■ To come within the purview of the Act, Defendants must establish (1) that the product is inherently unsafe and (2) that the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community. In *Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385 (Tex.1991), the Texas Supreme Court noted that encompassed with the term "common knowledge" are those facts that are so well known to the community as to be beyond dispute. *Id.* at 388. The State has alleged that the public was not provided the facts, because the Defendants suppressed relevant safety information to the point that consumers could not know as a matter of common knowledge the full extent of health risks associated with smoking and the alleged addictiveness of tobacco use.

Accepting the allegations in the Plaintiff's Second Amended Complaint as true, the Court finds that while the health risks of tobacco consumption are generally know,[15] the addictive nature of tobacco consumption is not generally known due to the concealment and misrepresentation by Defendants of its products as alleged by the State. Because the State has pled that Defendants misrepresented and concealed the addictive nature of its tobacco products, the State has taken its claim outside the purview of the Act, and the Act does not bar the State's

but does contain a claim for breach of express warranty. Defendants contend the claim must fail because there is no allegation of privity between the Defendants and the State. The Court finds that the State has sufficiently pled breach of express warranty and does not dismiss this claim.

**13.** In addition to the arguments discussed in this Memorandum Opinion and Order, the State argues that the inherently unsafe product defense does not apply where an otherwise dangerous product contains especially hazardous ingredients or where the defendant has failed to make the product safer.

**14.** "Through their individual advertising and public relations campaigns, and collectively,

through the Tobacco Institute, the Cigarette Companies have successfully promoted and sold cigarettes by concealing and misrepresenting the highly addictive nature of heir (sic) products." Plaintiff's Second Amended Complaint, par. 139; "From the 1950s and continuing through the filing of this suit, the Cigarette Companies have entered into agreements to suppress, distort, and obfuscate scientific and medical information relating to the use of tobacco products and the resulting disease." *Id.* par. 153.

**15.** "Like the dangers of alcohol consumption, the dangers of cigarette smoking have long been known to the community." *Allgood v. R.J. Reynolds Tobacco Company,* 80 F.3d 168, 172 (5th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 300, 136 L.Ed.2d 218 (1996).

claims. To hold otherwise would be stating beyond doubt that the State can prove no set of facts in support of its claims which would entitle it to relief in light of the Act. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("In appraising the sufficiency of the complaint ... the accepted rule [is that] a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

This ruling is not inconsistent with the Act's legislative history, which evidences an intent on the part of the legislature not to release those manufacturers or seller from liability that conceal or misrepresent a product's characteristics.[16] Moreover, if the legislature had intended to give a blanket exemption to tobacco products, the two prong qualifier would not have been placed in § 82.004 of the Act, and the Act would have included an express exemption. *See* William D. Farrar, Comment, *The Product Liability Act of 1993: How It Changes Texas Law*, 45 Baylor L.Rev. 633, 645–46 (1993).

## C. PROXIMATE CAUSE AND DIRECT INJURY

■ Defendants contend that the injury allegedly suffered by the State should be considered too remote as a matter of law. Their argument is rooted in concepts of proximate cause and the related principle of "remoteness." They state that because the State's injury is dependent on individual smokers becoming sick, there are too many steps in the causal chain to allow the State to proceed.[17] To allow this suit to go forward in this manner, it is argued, would violate traditional principles of causation. The State asserts that the presence of the individual smokers does not break the causal chain, rather it is a foreseeable consequence of the Defendants' conduct that has had a substantial part in bringing about the harm to the State.

■ In order to establish liability for alleged injuries, a plaintiff must establish proximate cause, *Travis v. City*, 830 S.W.2d 94 (Tex.1992). It has been stated that "[a]n act or omission is a proximate cause of the plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission." U.S. Fifth Circuit District Judges Ass'n, PATTERN JURY INSTRUCTIONS (CIVIL CASES) 112 (1995); *see also Ogle v. Shell Oil Co.*, 913 F.Supp. 490, 494 (E.D.Tex.1995). Generally speaking, proximate cause embodies "ideas of what justice demands, or of what is administratively possible and convenient." W. KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 264 (5th ed.1984).

■ Embodied in the concept of proximate cause is the notion that a plaintiff must assert a direct relationship between the injury it claims to have suffered and the allegedly injurious conduct. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). It has generally been held that such a relationship cannot be established when "a plaintiff ... complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's act...." *Id.* at 268–269, 112 S.Ct. 1311. Such an injury is considered to be too remote.

In the *Holmes* opinion, the Supreme Court discussed three concerns that must be addressed when determining whether a plaintiff's injury is too remote. First, the less direct an injury is, the more difficult it will be to attribute damages to the conduct of the defendant as opposed to other factors. Second, allowing "indirect claims" to proceed creates a risk of multiple recoveries, because the potential plaintiffs that are not parties to a particular action may someday sue in their own right. Finally, these remoteness concerns generally do not arise when those di-

---

16. *See* Comments of Rep. Seidlits, the House sponsor of the legislation, *Hearing on Tex.S.B. 4 Before the House State Affairs Comm.*, 73rd Leg., R.S. (Feb. 15, 1993).

17. The Defendants assert that there are four steps in the claim of causation for this case. First, the Defendants allegedly committed wrongs. Second, these wrongs caused a portion of the population of Texas to smoke. Third, a portion of these smokers became sick as a result of their activity. And fourth, some of these people were indigent, and the State paid their medical bills. *See* Defendants' Brief in Support of Motion to Dismiss, p. 20.

rectly injured bring suit, because they can be counted on to "vindicate the law as private attorneys general." *Id.* at 269–270, 112 S.Ct. 1311.

At the outset, the Court notes that the definition of "proximate cause" cited above could be satisfied by the State. In addition, a finding that the injury allegedly suffered by the State is foreseeable is also a distinct possibility. Therefore, the Court must focus its attention on the three concerns outlined in *Holmes* to decide whether the injuries asserted in this matter are too remote.

It is clear to the Court that the second and third concerns addressed in *Holmes* are not problematic in this case. With respect to multiple recovery, there can be none in this type of action. As the State points out in its brief, the State of Texas is the only party that can recover Medicaid benefits that have been paid as a result of the wrongful conduct of a third party. *See* Plaintiff's Response, at p. 25.

Based on the nature of this cause of action, the third concern discussed in *Holmes* is also absent. As discussed in the previous section, the State brings this action based on its quasi-sovereign interests in protecting the health, welfare, and well-being of the populace of the State. This common law concept provides the State with an independent cause of action to recover the damages it has allegedly incurred. It is clear that because the State is proceeding under this theory, there can be no better party to prosecute this matter. In fact, no other party is empowered to bring this type of action.

With respect to the difficulty in determining damages, the Court first notes that under the quasi-sovereign interest asserted by the State, damages will be inherently more difficult to determine than if the matter was brought on a claim-by-claim basis. However, difficulty in and of itself does not bar this action. Suits the assert quasi-sovereign interests will always involve a harm to individuals, but it is this harm and a state's interest in protecting against it that provides the basis for the action. There will always be individual harm found within the causal chain. This case is a perfect example of that fact. Nevertheless, the Court recognizes that some complex cases may present damage questions that are complicated to the extent that the injury alleged can only be classified as too remote. Based on the facts and information presently before the Court, it is the opinion of this Court that this case does not present sufficient difficulties.

Although the Court is not completely apprised on the manner in which the State seeks to prove damages, the basic damage allegations provided thus far in the litigation counsel against a finding that this plaintiff is too remote. The State will attempt at trial to prove damages through the use of statistical evidence presented by way of a "damage model." In general, the use of such evidence has been deemed permissible in this type of action. *See In re Chevron,* 109 F.3d 1016, 1020 (5th Cir.1997), *see also Hilao v. Estate of Marcos,* 103 F.3d 767 (9th Cir.1996) (use of statistical data to prove damages permissible when number of individual claims would be impossible to resolve). As will be addressed in another section of this opinion, this is not to say that the manner in which the State seeks to prove damages will satisfy all legal requirements. The Court only holds that at this stage in the litigation damages are not sufficiently difficult to calculate to warrant dismissal of this action.

Therefore, having considered the concerns of *Holmes,* the policy underlying the requirement of proximate cause, and the nature of this suit as a whole, the injury allegedly incurred by the State is not sufficiently remote to warrant dismissal. The Defendants' motion in this respect shall be denied.

## D. DUE PROCESS

The Court is of the opinion that it is premature to address Defendants' contention that the State's proposed direct action violates fundamental principles of due process. At this time, the State has not fully developed and has not presented to the Court a final version of its damages model. Thus, the Court is reluctant to render a decision that the use of such a damages model to prove aggregate damages violates fundamental principles of due process. Accordingly, the Court denies this aspect of the Defendants' motion at this time subject to renewed argument once the State presents its com-

pleted damage model and its case in chief is completed.

## IV. STATUTORY CLAIMS

### A. RICO

■ Counts 1–3 of the Second Amended Complaint allege Defendants violated 18 U.S.C. § 1962(a), (b), (c) and (d), the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Generally, the State alleges Defendants engaged in a pattern of racketeering from December 15, 1953 through the present through multiple predicate acts including, *inter alia,* wire and mail fraud, bribery, sending tobacco products through the mails in a manner calculated to place them in the hands of minors, intimidating witnesses in prospective legal proceedings, and obstruction of justice. Defendants move to dismiss the allegations for several reasons.

First, Defendants contend that private civil suits under RICO are available only to plaintiffs who have suffered injury to their "business or property," and does not apply to claims for medical treatment for personal injuries. Second, Defendants contend the proximate cause standard is not satisfied under RICO. Finally, Defendants argue that the complaint does not allege the existence of a viable "enterprise" or the necessary relationship between the "enterprise" and the alleged predicate acts. The Court rejects Defendants' arguments at this time.

The Court is not denying Defendants' contentions on the basis of a strong showing by the State on its RICO claim. In fact, the Court is not convinced the State can make a prima facie showing of the essential elements of RICO at trial. However, taking the State's allegations of RICO violations as true, the Court will refrain from ruling on the RICO claims until after Plaintiff has completed its case in chief, at which point the Court will hear an offer of proof on Plaintiff's RICO claims outside the presence of the jury. At this point, the Court will either allow Plaintiff to pursue its RICO claims or it will grant a judgment as a matter of law under Fed. R.Civ.P. 50.

Additionally, pending further ruling by this Court, the Plaintiff, in presenting evidence on its claims, shall not refer to the Defendants' conduct as constituting "criminal acts," "racketeering activity," or any other similar characterization. The danger of unfair prejudice which may result from any such conclusory characterizations far outweighs any probative value they may have. In addition, pending further ruling by this Court, the Plaintiff shall make no mention of any potential claims for alleged violations of RICO in the jury's presence. With the above conditions, the Court denies Defendants' motion to dismiss the RICO counts of the Second Amended Complaint.

### B. FEDERAL AND STATE ANTITRUST CLAIMS

■ Counts Four and Five of the Second Amended Complaint allege that Defendants have violated federal and state antitrust laws by unreasonably restraining markets for tobacco and health care.[18] Defendants contend that these claims must fail because (1) the State has not suffered an antitrust injury; (2) the State is not suing as a consumer, competitor, or other participant in the Texas cigarette market; and, (3) the State is not a direct purchaser as required by *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). The Court finds Defendants' first and second arguments persuasive for the following reasons and dismisses Counts Four and Five of the Second Amended Complaint.

■ The Court finds that the State has not suffered the type of injury the antitrust laws were designed to prevent. Antitrust injury, a component of the standing injury, is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' conduct unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). The Court in *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977),

---

**18.** Specifically, the State alleges Defendants violated 15 U.S.C. § 1 and Tex.Bus. & Com.Code § 15.05(a). Texas antitrust law is harmonized with federal antitrust law, and the same analysis will apply to both federal and state claims. *Abbott Labs., Inc. v. Segura,* 907 S.W.2d 503 (Tex. 1995).

found that plaintiffs had not suffered antitrust injury even though they had suffered injury-in-fact. The Court stated "[t]he injury should reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation."

The State alleges Defendants engaged in anticompetitive conduct by

[entering] into a contract, combination, or conspiracy to eliminate competition, including the dissemination of product information, regarding the quality, safety and composition of cigarettes and tobacco products, thereby eliminating alternative products from the market, restricting consumer choice and causing consumers to suffer smoking-related illnesses and health-care costs.

Plaintiff's Second Amended Complaint, p. 87.

■ The State's alleged injuries are increased medical care costs caused by Medicaid recipients' consumption of tobacco products. Assuming *arguendo* the State has alleged unlawful acts, the State has not alleged an antitrust injury of the type the antitrust laws were designed to protect. "[I]njury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny...." *Atlantic Richfield Co., supra,* at 334, 110 S.Ct. 1884. The State's loss must be "the type of loss that the claimed violations ... would be likely to cause." *Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 125, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Thus, the Court finds that the State has not sufficiency alleged an antitrust injury of the type the antitrust laws were intended to prevent.

The Court finds that the State's antitrust claims also fail for the reason that the State is not a participant in the relevant market, being the cigarette and tobacco market. Consumers and competitors are the parties that have standing to sue. *Bell v. Dow Chemical Co.,* 847 F.2d 1179, 1183 (5th Cir. 1988). The State may be a competitor in the health care market, but that is not the market in which trade was restrained. *Associated General Contractors v. Carpenters,* 459 U.S. 519, 539, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (noting that the plaintiff "was neither a consumer or competitor in the market in which trade was restrained.") "The court's focus must be upon competition in the allegedly restrained market." *Bell, supra,* at 1183. Accordingly, the Court finds that the State does not have standing to assert the state and federal antitrust claims.

## C. DTPA CLAIMS

■ In Count Fourteen of the Second Amended Complaint, the State alleges Defendants violated the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA").[19] The State alleges that Defendants "knowingly engaged in and continued to engage in, false, misleading or deceptive acts or practices which are declared unlawful."[20] and that said activity began at least as early as the 1950s and continues to the present. Defendants argue that because the State is not a "consumer" within the meaning of the DTPA, it has no standing to assert a claim under the DTPA. The Court agrees.

■ Section 17.50(a) of the Texas Business and Commerce Code provides that "[a] consumer may maintain an action ... [for] economic damages or damages for mental anguish...." To recover under the DTPA, the plaintiff must be a "consumer" within the meaning of the DTPA. *Meineke Discount Muffler v. Jaynes,* 999 F.2d 120, 125 (5th Cir.1993). To qualify as a consumer under the DTPA, the plaintiff must have sought or acquired goods or services by purchase or lease. Tex.Bus. & Com.Code Ann. § 17.45(4). The goods or services purchased or leased must be the basis of the complaint. *McDuffie v. Blassingame,* 883 S.W.2d 329 (7th App.Dist.1994, error denied) "Direct contractual privity between an individual and the defendant is not a consideration in determining an individual's status as a consumer under the DTPA." *Wellborn v. Sears, Roebuck & Co.,* 970 F.2d 1420, 1426 (5th Cir. 1992). Rather, consumer status is determined by focusing on the individual's relationship to the transaction. *Id.* The Texas Supreme Court has held that "acquiring

---

19. Tex.Bus & Com.Code § 17.41–.63 (West 1987).

20. Second Amended Complaint, par. 330.

goods or services need not involve a direct transaction or purchase by plaintiff." *Kennedy v. Sale*, 689 S.W.2d 890 (Tex.1985).

In *Mote v. Oryx Energy Co.* 910 F.Supp. 291 (E.D.Tex.1995), this Court overruled plaintiff's objections to a magistrate judge's report and recommendation and affirmed the magistrate judge's dismissal of a DTPA claim based on the plaintiff's failure to qualify as a consumer under the DTPA. In *Mote*, the plaintiff was injured while working for a drilling company on an offshore rig in the Gulf of Mexico. Oryx Energy Company operated the platform and Dan Webster was an Oryx consultant. Plaintiff was employed by Mallard Drilling. Plaintiff sued Webster, Mallard and Oryx to provide foreman/engineers for drilling the offshore wells. Thus, the transaction at issue was the contract to provide foreman/engineers for the drilling of offshore wells. In determining whether the plaintiff has consumer standing to sue Webster, the Court analyzed the "primary purpose" of the transaction at issue and found that the primary purpose of the transaction was not for the benefit of the plaintiff. Thus, the plaintiff did not qualify as a consumer under the DTPA.

In the instant case, the transaction at issue is the purchase of tobacco products by the citizens of the State. The State does not allege a nexus between the State and the purchase of tobacco products by the citizens of the State. The DTPA allegations in Count Fourteen consist of claims that Defendants misled and deceived the State and the public regarding certain facts about the health risks of smoking cigarettes with the intent to induce the State and consumers into transactions they would not have entered. First, the complaint does not describe the transaction the State was allegedly induced to enter, thus there are insufficient allegations regarding any transactions to which the State may have been a party. Second, the complaint does not describe how the State was to benefit from the purchase of tobacco products, the transaction between the citizen/consumers and Defendants. As in *Mote*, the Court looks to the primary purpose of the transaction at issue and finds that it was not for the benefit of the State. Absent any type of

nexus between the State and the transaction at issue, the State cannot qualify as a consumer. The court dismisses Count 14 of the Second Amended Complaint.

## V. LEGISLATIVE VERSUS JUDICIAL DETERMINATION

■ A final point raised by the Defendants is that because tobacco is a highly regulated product, the courts should leave the questions to be resolved by this suit to the legislature. In the first sentence of their argument, the Defendants state, "[t]he Attorney General asks this Court to step into the shoes of the Texas legislature and rewrite state law." [21] The Court disagrees with this proposition. By allowing this case to proceed, the Court is not rewriting any law. To the contrary, it is only allowing a claim that is based on quasi-sovereign interests to proceed. In the Court's opinion, such a basis for suit has long been available to the State. Therefore, this is not the type of radical departure from traditional theories of liability that the Fifth Circuit frowns upon. *See Thompson v. Johns–Manville Sales Corp.*, 714 F.2d 581, 583 (5th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984). In this case, the State has simply dusted off a long recognized legal theory and seeks to use it to further the purposes of the statutes in question and right the alleged wrongs involved in this matter.

As noted in previous sections of this opinion, the legislature has failed to supplant this type of action. In the Court's view, the Defendants impliedly ask the Court to do what they specifically caution the Court not to do; change the law absent legislative intent supporting such a change. The Court refuses to take this action and finds that the Defendants' motion shall be denied in this respect.

## VI. COMMON LAW PLEADING DEFECTS

### A. RESTITUTION/UNJUST ENRICHMENT

■ Defendants assert that the State's claim for recovery under theories of restitu-

---

21. Defendants Brief in Support at 36.

tion and unjust enrichment must fail because the State did not plead that it conferred any benefit upon Defendants. The Court agrees, and grants Defendants' motion to dismiss the State's claim of restitution and unjust enrichment.

The most recent definition of unjust enrichment by the Texas Supreme Court is that a party may recover under the theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992). In that case, the Texas Supreme Court opined, "[u]njust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss." *Id.* at 42. Defendants point out that subsequent courts have strictly construed this definition of unjust enrichment. *See Wilson v. Cinemark Corp.,* 858 S.W.2d 645 (Tex.App.1993, no writ) (affirming grant of summary judgment denying unjust enrichment claim because no benefit obtained by fraud, duress or undue advantage); *see also McNair v. Cedar Park,* 993 F.2d 1217 (5th Cir.1993). The State alleges in its Second Amended Complaint that Defendants have retained benefits to the loss of the State, because the State has paid medical costs attributable to smoking related disease rather than the Defendants. However, it is the individual smokers and not the Defendants who have received the primary and direct benefit of the payment of their medical expenses. Moreover, the State's expenditure cannot be said to have enriched Defendants. The Court finds that the alleged benefit enjoyed by Defendants is too attenuated and indirect to find support under the theory of unjust enrichment as enunciated in Texas.

▪ In support of its contention that Defendants have received a benefit to the State's detriment, the State further alleges that in caring for the victims of smoking in Texas, which was immediately necessary to satisfy the requirements of public health and safety, it has performed the Defendants' manifest duty. Under such circumstances, the State argues that recovery is provided for by Restatement of Restitution § 115, known as the emergency assistance doctrine:

A person who has performed the duty of another by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if (a) he acted unofficiously and with intent to charge therefor, and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety.

The Court has found no case, nor has the State cited any, in which a Texas court has addressed or adopted this theory of restitutionary recovery. Assuming that this doctrine is cognizable under Texas law, the Court is in doubt whether Defendants are subject to a manifest duty to provide medical care to individual smokers while the State concedes that it is under a legal duty to do so. Yet, in the absence of any recognition of this theory of recovery in Texas law, the Court declines to find that it is available as a cause of action to the State in this action. Accordingly, the Court dismisses Count Nine of the Second Amended Complaint.

## B. PUBLIC NUISANCE

▪ The State alleges in Count Ten of the Second Amended Complaint that Defendants have intentionally interfered with the public's right to be free from unwarranted injury, disease, and sickness and have caused damage to the public health, the public safety, and the general welfare of the citizens of the State of Texas. Defendants argue that the State has not pled a proper claim for public nuisance because it has failed to plead essential allegations under Texas public nuisance law, namely that the Defendants improperly used their own property, or that the State itself has been injured in its use or employment of its property.

▪ The Attorney General in Texas is authorized to bring suit to enjoin or abate a public nuisance. TEX.CIV.PRAC. & REM. § 125.022. A public nuisance is defined in § 125.021 as the use of any place for certain, specific proscribed activities such as gambling, prostitution, and the manufacture of obscene materials. "Where an action to enjoin a nuisance is brought under statutory authority, the case is limited to the provisions of the statute. The only activities

which may be enjoined are those which fall within the provisions of the statute upon which the application for injunction is based." *Benton v. City of Houston,* 605 S.W.2d 679 (Tex.Civ.App.1980, no writ). Because none of the proscribed activities defined under this statutory scheme are implicated under the allegations made in the presence case, the State may not maintain an action for injunctive relief pursuant to § 125.022.

Neither may the State maintain an action for damages under a public nuisance theory. The Court agrees with Defendants that the State has not pled a proper claim, because it has failed to plead essential allegations under Texas public nuisance law. Specifically, the State failed to plead that Defendants improperly used their own property, or that the State itself has been injured in its use or employment of its property. *See Wales Trucking Co. v. Stallcup,* 474 S.W.2d 184 (Tex.1971); *Walker v. Texas Elec. Serv. Co.,* 499 S.W.2d 20, 27 (Tex.Civ.App.1973, no writ); and, *Hart v. Dallas,* 565 S.W.2d 373, 379 (Tex.Civ.App.1978, no writ). The overly broad definition of the elements of public nuisance urged by the State is simply not found in Texas case law and the Court is unwilling to accept the state's invitation to expand a claim for public nuisance beyond its ground in real property. Accordingly, the Court dismisses Count Ten for public nuisance.

## C. NEGLIGENT PERFORMANCE OF A VOLUNTARY UNDERTAKING

In Count Eleven the State alleges that Defendants voluntarily assumed a duty to report honestly and completely on all research regarding cigarette smoking and health based upon their public pronouncements to do so. The State further pleads that by failing to report on such research, by publishing and publicizing fraudulent science, and failing, in general, to comply with the promises made in the "Frank Statement" and the industry's voluntary code, Defendants breached this duty. Finally, the State alleges that Defendants knew or should have known that the State would rely on their pronouncements and that this reliance would and did in fact proximately cause injury and damages to the State.

The State's cause of action is premised on the rule that whoever voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby. *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116 (Tex.1976). This rule is embodied in the Restatement (Second) of Torts § 323 (1965) that instructs:

> One who undertakes gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Defendants have argued that no Texas court has extended a cause of action under this section of the Restatement to create a "duty" based only on an advertisement. Moreover, Defendants contend that State's claim is deficient because even if there were a duty there was no undertaking for the benefit of the State, the State has not suffered physical harm and has made no allegation of property damage, and finally there is no allegation in the complaint that the State took any action in reliance on Defendants' statements. Because the Court finds that Defendants' first argument is valid, the Court need not address its subsequent contentions.

Although Texas courts have adopted § 323 of the Restatement as a basis of liability, they have not extended it to create a duty based upon corporate statements or advertising. As with the two common law claims discussed above, without recognition of such a duty by the Texas Supreme Court under this theory of tort liability, the court is loathe to find that the Defendants' statement created a duty. In absence of this requirement, the State cannot maintain its claim. Accordingly, the Court dismisses Count Eleven of the Second Amended Complaint.

## D. FRAUD/MISREPRESENTATION

The State alleges in Counts Twelve and Thirteen actual and constructive common law fraud as well as simple and gross negligent misrepresentations. Defendants argue that the State has failed to adequately allege that Defendants made any material representations that induced the State to act.

 The elements of fraud under Texas law are (1) a material representation; (2) the representation was false; (3) when it was made the speaker knew that it was false or made it recklessly without any knowledge of the truth but as a positive assertion; (4) he made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon the representation; (6) the party thereby suffered injury. *Crawford Painting & Drywall Co. v. J.W. Bateson Co.*, 857 F.2d 981, 985 (5th Cir.1988), *cert. denied*, 488 U.S. 1035, 109 S.Ct. 850, 102 L.Ed.2d 982 (1989).

In assessing this challenge to the sufficiency of the State's pleading of fraud, the Court bears in mind the Supreme Court's admonition that a complain should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley*, 355 U.S. at 45, 78 S.Ct. 99. Under this standard, the Court is not convinced that the State can prove no set of facts that would constitute a material representation on the part of Defendants that would entitle the State to recover. Therefore, the Court denies Defendants' Motion to Dismiss with respect to Counts Twelve and Thirteen.

## VII. CONCLUSION

The Court dismisses the State's claims for violation of the federal and state antitrust laws; the Texas Deceptive Trade Practices–Consumer Protection Act; restitution/unjust enrichment; public nuisance; and, negligent performance of a voluntary undertaking. Defendants' motions to dismiss in all other respects are denied.